CORSICANA PETROLEUM COMPANY v. MRS. M. J. OWENS ET AL.

No. 2716.   Decided May 19, 1920.

(222 S. W., 154.)

**1.—Contract—Mutuality—Option.**

A contract based on a valuable consideration is not invalid for want of mutuality because it is the purchase of an option; that, is, that one party, for a consideration paid, acquires the right, for a limited period, to abandon and terminate the contract, or to have it carried out in accordance with its terms, as he may elect. (Pp. 571, 572).

**2.—Same—Oil and Gas—Lease—Case Stated.**

The owner of land, for a consideration of $28.20, paid him, granted to another the right to prospect and bore for oil and natural gas thereon for a period of ten years. The lessee was to bore a well within one year, or to pay thereafter $28.20 every three months in advance, in order to preserve his rights; and was to have the optional right to surrender the grant and annul the contract at any time on payment of $5.00 and all other amounts due, or to continue it in force by payment of the quarterly rent as it fell due. The lessor was to have one eight of all oil produced. Having paid or tendered the quarterly rent as it fell due, the lessee began boring a well one year and ten months after date of the contract and produced oil in paying quantities two years and one month after the date of the contract, and at an expense of $14,000. The lessor, meantime, had refused to accept further payments of quarterly rental, and, while the well was boring, sued to cancel the lease and recover possession. Held, that the contract, being based on a valuable consideration, was not invalid as being unliteral; that lessee's optional right to continue it in force by payment according to its terms was valid; and that the lessor was not entitled to cancel the lease and recover possession. (Pp. 570-572).

Error to the Court of Civil Appeals for the Seventh District, in an appeal from Wichita County.

Mrs. Owens and others sued the Petroleum Co. Defendant had judgment and plaintiffs appealed. The judgment was reversed and the cause remanded (169 S. W., 192) whereupon the company obtained writ of error.

*George C. Greer, W. H. Francis,* and *Carrigan, Montgomery & Britain,* for plaintiff in error.—The lease contract in this case shows that the appellee acquired a valid option on the land in controversy, and the owner of land has a perfect right to give such an option if it is supported by a consideration and if a sum of money is paid for an option the promisee may, at his election, enforce the con-

tract, and where the grantor in an option contract seeks to set the same aside, he will not be permitted to do so if the contract is for a valuable and satisfactory consideration and especially so when the contract has been performed.  Quebe v. Railway Co., 98 Texas, 6, National Oil and Pipe Line Co. v. Teel, 95 Texas, 591; Pittsburg v. Bailey, 12 L. R. A., N. S., 745; Poe v. Ulrey, 84 N. E., 46; Rose v. Lanyon, 74 Pac., 625; Emery v. League, 72 S. W., 607; Staley v. Witherspoon, Mem. Opinion of Sup. Ct., refusing writ of error; Gt. Western Oil Co. v. Carpenter, 95 S. W., 57; Lovett v. Eastern Oil Co., 70 S. E., 707; Rich v. Doneghy, 177 Pac., 86; Guffey v. Smith, 237 U. S., 101.

When a lease contract is given for a valuable consideration and it provides that if a well is not drilled within one year thereafter, then that the lessee shall pay a quarterly rental until a well is completed, and the lessee pays three quarterly rentals which have been received, which rentals pay for the lease rent up to the 6th day of March, 1913, and the lessor then refuses to accept the rentals thereafterwards, notwithstanding the fact that she agreed that for a valuable consideration she would do so, then, under such circumstances the lessee has the legal right within a reasonable time after the refusal of said rentals, to develop the property leased, and the acceptance of the lease rentals up to March 6, 1913, would extend the lease to that time, and the lessee was not bound to develop the premises until after March 6, 1913, and the lease on the 6th day of March, 1913, stood in the same legal attitude it did on the day it was executed, and the lessee had as valid rights under it at that time as it had on the day of its execution.  New American Oil and Mining Co. v. Troyer, 76 N. E., 253; Monarch Oil Co. v. Richardson, 99 S. W., 668.

*Slay & Simon,* and *Theodore Mack,* for defendants in error.—The lease contract involved in this suit is a unilateral contract, and void for want of mutuality for the reason that by its terms the lessee, upon the payment of a nominal sum, is given the right and option to surrender the lease at any time upon the payment of five ($5) dollars, and no obligation rested upon the lessee to drill a well, the terms of the lease providing that lessee agrees to drill and complete a well within one year from the date of the lease, or thereafter to pay to the lessors twenty-eight and 20/100 ($28.20) dollars each three months, in advance, from the 6th day of June, 1912, to the end of the term, or until the well is completed, or this lease is surrendered as herein stipulated; and the completing of such well, if productive, shall be the full consideration to grantors for the grant hereby made to grantee, etc., Witherspoon v. Staley, 156 S. W., 557;  Guffey Petroleum Company v. Oliver, 79 S. W., 884; Smith v. Guffey, 202 Fed. Rep., 106; Rogers v. Bryce, 74 S. W., 590; People's Gas Co. v. Dean, 193 Fed., 938;  Emory v. League,

72 S. W., 603; Forney v. Ward, 62 S. W., 108; Steelsmith v. Gart-land, 45 W. Va., 27, 44 L. R. A., 107; Huggins v. Daley, 99 Fed., 606, 48 L. R. A., 320; Bettman v. Harness, 42 W. Va., 433, 36 L. R. A., 566; Guffey v. Hukill, 34 W. Va., 49, 8 L. R. A., 759; Smith v. Root, 30 L. R. A. (N. S.), 176; Natl. Oil & Pipe Line Co. v. Teel, 67 S. W., 545; Presidio Mining Co. v. Bullis, 68 Texas, 581.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The suit of the plaintiff, Mrs. M. J. Owens as surviving wife of M. J. Owens, deceased, and in her own behalf and for their children, was to cancel a mineral or oil lease upon 188 acres of land executed by herself and husband, June 6, 1911, in favor of the Corsicana Petroleum Company, upon the several grounds, (1) that it was a unilateral agreement and therefore void; (2) that the lessee had breached it by failing to complete an oil well on the premises within one year from the date of the instrument; and (3) that the lease had been abandoned by the lessee.

In the trial court, a verdict was directed for the defendants. The honorable Court of Civil Appeals, on the appeal, held the lease to be void because unilateral; but in reversing the judgment, remanded the case for trial upon the issue of estoppel made by the Petroleum Company.

The lease recited that the grantors, in consideration of $28.20 paid by the grantee, the receipt being acknowledged, had granted, sold, etc., unto the grantee all the oil, gas, coal and other minerals in and under the land described, with the exclusive right to drill, mine and operate thereon for producing oil, gas, coal and other minerals; to be held by the grantee for the term of ten years from the date of the instrument and as much longer as oil, gas or other minerals were produced in paying quantities; yielding to the grantors the 1/8 part of all oil produced and saved from the premises. The grantee agreed in the instrument to complete a well on the premises within one year from the date of the instrument, or pay to the grantors as lease rental, $28.20 each three months in advance from the 6th day of June, 1912, from quarter to quarter, to the end of the term, or until the well was completed, or the lease surrendered as elsewhere stipulated in the instrument; the drilling of such well to be full consideration of the grant made by the instrument. A further clause provided that in consideration of the payment of the $28.20 and the quarterly amounts, just mentioned, the grantee acquired and had the right and option either to surrender the grant at any time upon the payment of the sum of $5 and all amounts then due under the instrument and thereby be discharged from all further obligation, the grant thereby becoming null and void, or to continue the grant in full force and effect from quarter to quarter and from year to year by making the stipulated quarterly payments which the grantors bound themselves to accept when tendered, it

being further recited that such option was granted for a valuable and satisfactory consideration.

Before the end of the first year of the lease, M. J. Owens died, leaving his wife and ten children surviving. There was no administration upon his estate. On June 6, 1912—one year from the date of the instrument, Mrs. Owens was paid and accepted the stipulated quarterly lease rental, $28.20, further quarterly payments in that amount being regularly paid to and accepted by her down to and including the payment due December 6, 1912. This extended and carried the lease, according to its terms, to March 6, 1913. On this latter date, a further quarterly payment was duly tendered Mrs. Owens, but its acceptance was refused. On March 28, 1913, the Petroleum Company began preparations to drill a well on the premises. Actual drilling of the well began on April 7, 1913, at an expense of $14,000 in that connection up to the time the present suit was filed on May 14, 1913. The well was completed, July 5, 1913, producing oil in paying quantities, with an average of 117 barrels of oil per day.

The issue of abandonment of the lease was, in our opinion, not raised by the evidence. The parties to the lease were competent to contract. No fraud or imposition of any kind is charged. The question in the case, therefore, is simply whether the terms of the lease are such as to make it unenforcible.

We fail to see anything in the terms of the several agreements evidenced by the instrument which invalidates it. The finding of oil upon the land was merely prospective. For a valuable consideration, satisfactory to themselves, the grantors by the instrument gave the grantee the right to prospect upon the land for a definite period; the right to seven-eighths of the oil if found; the right, in lieu of its completing a well within the first year, to extend the time for its completion, within the term of the grant, by its making the quarterly payments; and the right or option to surrender the lease by paying the sum of $5 and all other amounts due under it up to that time. There is nothing unlawful about such a contract, and the parties were privileged to make it. If the grantors were willing to accept the quarterly payments instead of the completion of a well within the original period stipulated for its completion, that was their affair. They contracted to that effect by the instrument. The contract being fair, there can be no reason for a court's striking down that part of it.

The grant of the right to the grantee to surrender the lease by the payment of an amount in addition to the original consideration and all other amounts then due under the instrument, relieved the grantee of any requirement to complete a well. But the grantors, for an independent consideration, by their contract agreed that the grantee should have that option. The unilateral character of the agreement for the option, is of no consequence. A contract for the grant of

an option is necessarily unilateral. An option is granted for the purpose of enabling the grantee to exercise the particular right or not, as he may elect. The value of it consists in that privilege. Owners of property have the unquestioned power to grant such rights with respect to it. They are free to validly make such contracts. When so made; it is the duty of courts to uphold and enforce them. A contract for the grant of an option, limited to a definite time, is therefore valid and enforcible if supported by an independent consideration. National Oil & Pipe Line Company v. Teel, 95 Texas, 586, 86 S. W., 979. In many valid contracts the promise is only on one side. They are unilateral. As to them, the inquiry is not whether they are of that character, but whether they are supported by a consideration. In return for the consideration paid them, the grantors here agreed that the grantee should have the right to surrender the lease on the terms stated. If the right was not exercised, the grantee would remain bound by its covenants. If exercised, the grantors would be free to deal with the premises. A surrender was not to affect any existing liability. There is nothing inequitable about such an agreement. Its presence in the instrument did not invalidate it. Guffey v. Smith, 237 U. S., 101, 59 L. Ed., 856, 35 Sup. Ct., 526; Rich v. Doneghey, 177 Pac., 86, 3 A. L. R., 352.

The judgment of the Court of Civil Appeals is reversed and the judgment of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*