### AL & LLOYD PARKER CO. et al. v. PERKINS et al.

No. 12425.

Court of Civil Appeals of Texas. San Antonio.

Sept. 3, 1952.

Rehearing Denied Sept. 24, 1952.

Rentfro, Rentfro & Vivier, Brownsville, Carter, Stiernberg, Blanton & Skaggs, Harlingen, Small, Small & Craig, Austin, for appellants.

Crain, Muggley & Hardy, P. F. Dominy, N. A. Colvin, San Benito, for appellees.

NORVELL, Justice.

This is an appeal from a summary judgment rendered for plaintiffs and against defendants for the sum of $7,200. Rule 166-A, Texas Rules of Civil Procedure. (The parties will be designated as in the trial court.) The motion for judgment was contained in a supplemental petition which simply and briefly states that judgment should be rendered for the plaintiffs "upon the pleadings, instruments, documents and stipulations on file in this cause on the following issues: 1. On the issue of agency under and by virtue of the said contract on file in this cause. * * *" (The remaining grounds, Nos. 2 and 3, relate to the amount for which judgment should be rendered.)

A hearing was had upon the motion and it appears that the "contract on file in this cause" was one dated August 12, 1950, between plaintiffs, T. A. Perkins and Anna Perkins, and defendants, Al and Lloyd Parker, doing business as Al and Lloyd Parker Company. As we understand plaintiffs' position as set forth in their brief, it is, that this contract constituted Al and Lloyd Parker the agents of T. A. and Anna Perkins to sell 134.8 acres of land known as the Perkins farm and located about seven miles southwest of San Benito, Texas; that after the execution of the contract defendants sold the farm for $60,000 and failed to account for all sums received over $51,300 ($54,000 less 5% or $2,700). There seemingly is an alternative contention that even if the contract did not in itself create an agency, the conduct of the parties in accordance therewith operated to bring about such relationship.

We are in accord with defendants' position that the contract in itself did not create the legal relationship of principal and agent between the parties.

Paragraph 2 of the agreement is as follows:

"2. For and in consideration of One Thousand and no/100 ($1,000.00) Dollars cash, and other good and valuable considerations paid by Second Party (defendants) to First Party (plaintiffs), the receipt of which is hereby acknowledged, First Party hereby grants and assigns to Second Party the right and authority to purchase or sell the property hereinafter described at the price and in accord with the terms as hereinafter provided."

Paragraphs 3, 4 and 5, provide that if second party decides to purchase or sell the property, it will notify the first party in writing and abstracts will be furnished. If title be accepted by second party or its assigns, it is provided the property "shall be conveyed to said second party or second party's assigns, by deed of General Warranty and thereupon second party shall pay for said property as herein provided."

Paragraph 6 reads as follows:

"It is hereby understood and agreed between the parties hereto, that Second Party shall have the right, at said Second Party's option, to purchase the property herein described, for its account, or said Second Party may sell the same to some other person, firm or corporation."

Paragraph 8 is applicable if second party decides to sell the property as agent of first party. It reads as follows:

"If Second Party sells said property at the price and in accord with the

terms herein provided, First Party shall pay Second Party a commission of five per cent, which shall be commission earned by said Second Party as a real estate dealer, and shall be paid by First Party to Second Party immediately after title to the property herein described has been delivered to purchaser."

The purchase price set forth in the contract was $54,000, with a provision whereby part of the consideration could be represented by vendor's lien notes. In the event second party elected to purchase the property, a discount of five per cent on the purchase price was provided for. The contract provided that it should "remain in full force and effect through a period of 141 days from date, * * *" and that, "In the event Second Party sells the property herein described, or becomes the purchaser of said property on or before the expiration of this contract, at the price and in accord with the terms herein stated, the consideration paid by Second Party to First Party, as set forth in the second paragraph of this contract, shall be returned to said Second Party by First Party concurrent with delivery and acceptance of title. In the event second party fails to either buy or sell said property at the price and terms herein provided, the consideration paid by second party to first party as set forth in the second paragraph of this contract, shall be forfeited to first party by second party as liquidated damages."

■■ It is well settled that an agent having an option to buy must make a full disclosure of all offers received by him on behalf of his principal before exercising his option. Villiva v. Harrison, Tex.Civ. App., 102 S.W.2d 520; Rattray v. Scudder, 28 Cal.2d 214, 169 P.2d 371, 164 A.L.R. 1356; 8 Am.Jur. 1040, Brokers, § 93. This rule is not disputed by defendants. However, the agreement here involved did not bring about the legal relationship of principal and agent between "first party" and "second party" immediately upon its execution. The most salient features of the contract were the payment of a consideration of $1,000 by "second party" to "first party" and the setting of a definite selling price (from the owners' standpoint), which was $54,000 less five per cent, whether the defendants as "second party" elected to buy or elected to sell. While not identical in legal effect, there is a similarity between the contract now under consideration and one which provides that an agent as and for his commission shall receive all sums in excess of a specified amount. 8 Am.Jur. 1040, Brokers, § 92. For a consideration of a thousand dollars in hand paid, plaintiffs agreed to dispose of their property for $54,000 less five per cent, regardless of whether the defendants decided to buy or sell. Undoubtedly the defendants paid in the thousand dollars which was subject to forfeiture upon the hope of realizing a profit on the transaction over and beyond five per cent of the purchase price which would be the usual real estate dealer's commission. The contract was an option agreement. Under it, defendants could elect, within 141 days from the date thereof, whether to purchase the property on their own account or sell it as agents of plaintiffs. Until this election was exercised neither the principal-agent nor vendor-purchaser relationship came into existence. Corsicana Petroleum Co. v. Owens, 110 Tex. 568, 222 S.W. 154; Sinclair Refining Co. v. Allbritton, 147 Tex. 468, 218 S.W.2d 185, 8 A.L.R.2d 595.

■ Nor do we believe it can be said that the showing made outside the contract proper discloses that there is no genuine issue of fact in the case. Other written instruments in the record brought to this Court which may have been considered by the trial judge disclose that defendants sold the property involved to J. H. Bares and L. M. Mikkelson, and that T. A. Perkins and Anna Perkins executed a warranty deed conveying the property to said purchasers. There are two letters written with reference to the transaction by Lloyd Parker. In one of them, in setting forth the sums making up the total consideration of $54,000, the item of $2,700 is mentioned as "Five (5%) Per Cent *Commission*," rather than *discount,* but these letters, together with other indicated transactions such as defendants' advertising the property for sale prior to the exercise of their

option, do not disclose unequivocally that defendants were acting as agents or in such manner as equity would hold them accountable as agents. In view of another hearing or trial, we pretermit further discussion as the facts of the case have not been fully developed.

We hold that the court erred in granting the motion for summary judgment. Accordingly, the judgment is reversed and the cause remanded.

Reversed and remanded.