Oscar Jewell **TAYLOR** and Barbara Taylor, Appellants,

v.

Eliseo **CARBAJAL** and Argelia Carbajal, Appellees.

No. 09–09–00035–CV.

Court of Appeals of Texas, Beaumont.

Submitted Dec. 31, 2009.

Decided Jan. 14, 2010.

James D. Hurst, Huntsville, for appellants.

Richard R. Burroughs, Cleveland, for appellees.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

CHARLES KREGER, Justice.

Oscar Jewell Taylor and Barbara Taylor appeal a judgment that declares the parties' rights concerning the exercise of an option to purchase land that the Taylors leased to Eliseo Carbajal and Argelia Carbajal. The sole issue raised on appeal contends the Carbajals failed to give timely notice of their intent to exercise their option to purchase the property. We hold that the trial court did not err in ruling that the Carbajals gave the Taylors notice of the exercise of the option before the option expired. Accordingly, we affirm the judgment.

Using a pre-printed form selected and modified by Barbara Taylor, the parties executed the lease of commercial property on August 28, 2002. The lease recites that the lessors demised the premises for a term of five years, commencing October 2, 2002, and terminating on October 2, 2007. The lease required payments of $800 per month, and provided that "amount paid on lease will go to purchase of property

$125,000." The Carbajals paid an $8,000 security deposit that remained in the Taylors' possession at the time of trial. The dispute primarily arises from the construction of the option to purchase, which reads as follows:

> Option to *Purchase.* Provided that Lessee is not in default in the performance of this lease, Lessee shall have the option to *purchase* for an additional term of _____ months commencing at the expiration of the initial lease term. All of the terms and conditions of the lease shall apply during the renewal term except that the monthly rent shall be the sum of $ _____. The option shall be exercised by written notice given to Lessor not less than _____ days prior to the expiration of the initial lease term. If notice is not given in the manner provided herein within the time specified, this option shall expire.

The Carbajals remained in possession of the property beyond October 2, 2007, and continued to pay $800 per month in rent. According to Argelia Carbajal, the Taylors demanded that the Carbajals purchase the property for $110,000 in addition to the lease payments that had been made, for a total of $150,000. Jewell Taylor denied that he talked to Eliseo Carbajal about a new price for the property and testified that "we had already agreed and he would intend to buy it at the end of the lease." Jewell Taylor admitted that he was willing to sell the Carbajals the property at the price agreed to in the lease, but refused to credit the lease payments. Barbara Taylor admitted that their agreement in 2002 was to apply full credit of each and every payment made on the lease, but refused to apply any of the lease payments made after October 1, 2007, toward the purchase price.

On April 23, 2008, the Carbajals gave written notice of their intent to exercise the option to purchase the property. The Taylors rejected the Carbajals' May 1, 2008, payment and on May 20, 2008, gave written notice to vacate the premises by July 1, 2008. The Carbajals filed a petition for declaratory judgment and deposited $50,000 into the registry of the court as the balance due on the purchase price of the property.

The trial court found that the Taylors "prepared the lease agreement and left blank time frames on Lessor's remedies on default and option to purchase." The trial court found the balance due by the Carbajals on the purchase price for the property was $55,055.70. The Carbajals deposited an additional $5,055.76 into the registry of the court.

■■■ The Taylors contend the option expired on October 1, 2007. The Carbajals contend the option to purchase remained in effect while they remained in possession of the property and not in default.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003); *Gulf Ins. Co. v. Burns Motors, Inc.,* 22 S.W.3d 417, 423 (Tex.2000); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *J.M. Davidson, Inc.,* 128 S.W.3d at 229; *Coker,* 650 S.W.2d at 393. Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996); *W. Reserve Life Ins. Co. v. Meadows,* 152 Tex. 559, 261 S.W.2d

554, 557 (1953); *see also* [*Provident Life & Accident Ins. Co. v.*] *Knott,* 128 S.W.3d [211,] 219 [ (Tex.2003) ].

*Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex.2005).

▆▆▆ First, we must determine whether the lease expired in October 2007 or remained in effect on the date the Carbajals gave notice of exercise of the option. The general common law rule provides that "[a] tenant who remains in possession of the premises after termination of the lease occupies 'wrongfully' and is said to have a tenancy at sufferance." *Bockelmann v. Marynick,* 788 S.W.2d 569, 571 (Tex.1990). "Under the common law holdover rule, a landlord may elect to treat a tenant holding over as either a trespasser or as a tenant holding under the terms of the original lease." *Id.* We look to the terms of the lease to determine whether the terms of the lease continue in the event of a holdover tenancy. *See id.* at 571–72.

It is apparent that Barbara Taylor converted a form lease renewal clause into an option clause, retaining some of the renewal language and leaving several terms blank. The option paragraph provides that "[a]ll of the terms and conditions of the lease shall apply during the renewal term except that the monthly rent shall be the sum of $ _____." It is undisputed that the Carbajals continued to pay monthly rent in the amount of $800, and that the Taylors accepted each payment until after the Carbajals gave written notice of the option to purchase. It follows that the parties did not understand this clause to mean that no rent was due. Thus, it appears the "monthly rent" exception did not apply, and all of the terms and conditions of the lease applied during the "renewal term."

"Renewal term" is not defined in the lease, but the previous sentence states that "[p]rovided that Lessee is not in default in the performance of this lease, Lessee shall have the option to *purchase* for an additional term of _____ months commencing at the expiration of the initial lease term." The second half of this sentence is somewhat ambiguous: do the Carbajals have an unspecified number of months to exercise the option to purchase mentioned earlier in the sentence, or is the phrase merely an acknowledgment that the lease might be renewed for an unspecified period of time? The agreement of the parties did not provide the Carbajals with the right to renew the lease; instead, they could exercise an option to purchase the property. However, by accepting the lease payments after October 1, 2007, the Taylors elected to treat the Carbajals as a tenant holding under the terms of the original lease. *See Bockelmann,* 788 S.W.2d at 571. Under either possible construction of the clause, the express terms of the contract provided that all of the terms and conditions of the lease continued during the "renewal term." The contract does not provide for the length of the renewal term; however, at the very least, it would include the period during which the Carbajals continued in possession of the property and the Taylors accepted monthly lease payments without giving notice of termination.

Next, we must determine whether the option period expired. The contract provided that "[t]he option shall be exercised by written notice given to Lessor not less than _____ days prior to the expiration of the initial lease term." The Taylors construe the contract to require written notice "prior to the expiration of the lease term." Thus, they argue, the Carbajals failed to meet the final sentence of the option paragraph, which required written notice to be given "within the time specified" by the option paragraph. This approach is internally inconsistent, as the Taylors' construc-

tion of the contract requires that the other incomplete phrases in the same paragraph be read out of the contract altogether. Furthermore, the Taylors' construction of the contract fails to account for the fact that no time was specified for the exercise of the option. That term was left blank. The Taylors admitted that the lease does not give dates and times certain for the Carbajals to give notice of option to purchase.

■ The Carbajals argue that when the time for performance is omitted, the contract may be performed within a reasonable time. *See KMI Cont'l Offshore Prod. Co. v. ACF Petroleum Co.*, 746 S.W.2d 238, 243 (Tex.App.-Houston [1st Dist.] 1987, writ denied) ("When an option provision fails to impose a time limitation, courts will construe the provision to require that it be exercised 'within a reasonable time.'"). The Taylors argue that time is always of the essence in an option contract. *See Ducc Realty Co. v. Cox*, 356 S.W.2d 807, 809 (Tex.Civ.App.-Waco 1962, no writ) ("In option contracts time is nearly always of the essence."). When an option contract does not specify time of performance, "the law will imply that a reasonable time is meant." *Lusher v. First Nat'l Bank of Fort Worth*, 260 S.W.2d 621, 626 (Tex.Civ.App.-Fort Worth 1953, writ ref'd n.r.e.); *see also Hatt v. Walker*, 33 S.W.2d 489, 499 (Tex.Civ.App.-Dallas 1930, writ dism'd w.o.j.).

■ Time is of the essence in an option contract because it is unilateral. *Johnson v. Portwood*, 89 Tex. 235, 34 S.W. 596, 598 (1896). In this case, however, the unilateral option was part of a bilateral contract. The Carbajals had the exclusive right to exercise the option to purchase, but the Taylors had the exclusive right to renew the lease under the same terms and conditions as the original lease. Thus, under this contract both parties could control

what occurred after the five-year lease term ended. The Carbajals could purchase the property, or the Taylors could renew the lease. The option provision was not excluded from the renewal language. Because the provision was left blank, the contract failed to specify that the notice had to be given before the expiration of the initial lease term.

The contract in this case is distinguishable from a case in which the extension of the lease is contingent upon the exercise of the option. In *Kruegel v. Berry*, the lease provided that the tenant could buy the property "any time within the expiration of said term of two years" and also provided that if the landlord defaulted on the covenants "then this lease shall remain in full force after the expiration of said two years[.]" *Kruegel v. Berry*, 75 Tex. 230, 9 S.W. 863, 864 (1888). The tenant remained in possession and paid the lessor's successor rent, then tried to exercise the option. *Id.* The court held the lease extension clause never took effect because it was contingent upon the tenant's timely exercise of the option. *Id.* at 865.

Here, a renewal clause is contained within the option paragraph, but it is not expressly contingent on the exercise of the option. That renewal clause expressly provides that all of the terms and conditions of the contract will continue during a renewal. The only potentially contrary provision appears in a clause that was left blank. Under these circumstances, a reasonable time for the exercise of the option includes the period of time during which the parties continued to perform the lease. The Carbajals gave written notice before the Taylors gave notice of termination. Accordingly, the trial court did not err in declaring that the Carbajals have a right to purchase the property for the amount

agreed to in the lease. We overrule the issue and affirm the judgment.

AFFIRMED.

HOLLIS HORTON, Justice, dissenting.

By the time the Carbajals gave the Taylors written notice of their intent to buy the Taylors' property, their option to purchase, by its express terms, had already expired. The majority finds the Carbajals timely exercised the option, when the record demonstrates otherwise. I would find the trial court erred in failing to find that the purchase option had expired. Because the majority affirms the trial court's judgment when I would reverse, I respectfully dissent.

Generally, the failure to give the notice within the deadline created by an option agreement is fatal if the option contract, by its express terms, contains a deadline for such notice. *Ducc Realty Co. v. Cox*, 356 S.W.2d 807, 809 (Tex.Civ.App.-Waco 1962, no writ). In this case, the Carbajals' option contract, under the circumstances shown by the evidence, expired on October 2, 2007. Further, it is undisputed that the Carbajals did not exercise their option under the lease to purchase the property until April 23, 2008.

The contract between the parties provides that "[i]f notice is not given in the manner provided herein within the time specified, the option shall expire." Although the parties left blank, and thus did not specify the number of days' notice required by their contract, the contract also states that notice is required to be given "prior to the expiration of the initial lease term." Although the term "initial lease term" is not expressly defined in the contract, the lease's initial term was for five years, which began on October 2, 2002 and ended on October 2, 2007. Because the evidence showed that the Carbajals complied with the lease during this period, the initial lease term expired on October 2, 2007.

Regardless of the reasonable time periods that a court might insert into the blanks in the parties' contract, the contract provision requiring the Carbajals to elect their option to purchase "prior to the expiration of the initial lease term" cannot be read out of the parties' agreement. A reasonable interpretation of the phrase "initial lease term" is that the parties intended the option to be exercised, if the lease was still in force, no later than October 2, 2007. In my opinion, *Kruegel v. Berry*, 75 Tex. 230, 9 S.W. 863, 865 (1888), with similar facts, requires that we reach a similar result; the optionees' right under the option to purchase the property expired prior to the date they exercised the option.

Similarly, after concluding that an option to purchase land had not been timely exercised, this court explained that the party that exercises an option " 'must strictly comply with the option contract and an attempted acceptance which modifies any of its terms is no acceptance.' " *Creson v. Christie*, 328 S.W.2d 772, 777–78 (Tex.Civ.App.-Beaumont 1959, writ ref'd n.r.e.) (quoting *Lambert v. Taylor*, 276 S.W.2d 929, 932 (Tex.Civ.App.-Eastland 1955, no writ)). The strict enforcement of option terms is well settled, even though the party that holds the right to exercise an option may be excused under circumstances where the failure to exercise the option is shown to have been caused by the fault of the party that gave the option. *See Zeidman v. Davis*, 161 Tex. 496, 342 S.W.2d 555, 558 (1961) (reversing and rendering judgment where lease's renewal option was not timely exercised); *Jones v. Gibbs*, 133 Tex. 627, 130 S.W.2d 265, 271–72 (1939) (absent fault by the optionor, the optionee held to the strict terms of option agreement). In this case, there is no evi-

dence to show that the Taylors caused the Carbajals to delay their decision to exercise the option to purchase the property.

In summary, after considering the testimony in the record, I disagree that a reasonable interpretation of the phrase "initial lease term" extends through the date the Carbajals elected to purchase the property in April 2008. In my opinion, the trial court erred in enforcing an expired option. Because the majority chooses to affirm when I would reverse and render, I respectfully dissent.